# EXHIBIT 1

**Settlement Agreement**

## **SETTLEMENT AGREEMENT**

This settlement agreement (the "Agreement") is entered into as of December 20, 2018 (subject to the provisions regarding effectiveness herein) by and between Lonnie H. Correll ("Correll"), on the one hand, and Woodbridge Group of Companies, LLC and its affiliated debtors and debtors in possession (the "Debtors," and, together with Correll, the "Parties," and each individually a "Party"), on the other hand.

### Recitals

A.  The Debtors' chapter 11 bankruptcy cases are pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), jointly administered under the chapter 11 case entitled *In re Woodbridge Group of Companies, LLC, et al.*, No. 17-12560-KJC (the "Bankruptcy Cases").

B.  On August 22, 2018, the Debtors filed the *First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and its Affiliated Debtors* (Docket No. 2397) (as it may be amended, supplemented, or modified from time to time pursuant to the terms thereof, the "Plan"), and the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and its Affiliated Debtors* (Docket No. 2398). On October 26, 2018, the Bankruptcy Court entered an order confirming the Plan (Docket No. 2903).

C.  On or about June 7, 2018, Correll filed Proof of Claim No. 7093 (the "Claim") against the Debtors. The Claim asserts an unsecured claim in the amount of $11,309.40 on account of unpaid commissions and/or other compensation allegedly owing to Correll.

D.  According to the Debtors' records, prior to the filing of the Debtors' bankruptcy cases, Correll received commission payments or other compensation from the Debtors in the aggregate amount of $98,235.14.

E.  On September 17, 2018, certain of the Debtors filed the *Complaint Objecting to Claim and Counterclaiming for Avoidance and Recovery of Avoidable Transfers and for Equitable Subordination* (Adv. Case No. 18-50822 (KJC)) (the "Adversary Proceeding"), pursuant to which the Debtors seek to disallow or subordinate the Claim and avoid and recover the prepetition transfers.

F.  In connection with this Agreement, Correll has submitted a declaration (the "Declaration," attached hereto as **Exhibit 1**) regarding, *inter alia*, his assets and the values thereof. Correll represents that the statements set forth in the Declaration are true and complete. The Debtors have relied on the truth and completeness of the statements made in the Declaration in entering into this Agreement.

G.  The Parties wish to resolve all of the matters set out above and to otherwise settle any and all other disputes between or among them, known and unknown, on the terms and conditions set out in this Agreement.

Now, therefore, in consideration of the foregoing, the Parties stipulate and agree as follows:

## Agreement

1. The foregoing recitals, set out at paragraphs A through G, inclusive, are incorporated herein as an integral part of this Agreement.

2. The Parties warrant that they are authorized to enter into this Agreement and that by their signatures below, it will become a binding agreement, subject only to satisfaction of the conditions set forth in paragraph 4.

3. Subject to the conditions set forth in paragraph 4, upon the Effective Date (as defined below), the Claim shall be disallowed in its entirety and with prejudice, and Correll shall have no right to any distribution or recovery in the Bankruptcy Cases, whether on account of the Claim or otherwise. Within the later of (i) February 1, 2019, and (ii) five (5) business days of the Effective Date, Correll shall pay the Debtors $5,000 (the "Settlement Payment") via check made payable to "Woodbridge Group of Companies, LLC" and mailed to the notice address set forth in paragraph 15 below. Promptly upon receipt of the Settlement Payment, the Debtors shall cause the Adversary Proceeding to be dismissed.

4. This Agreement is not effective unless and until all of the following have occurred:

   a. The Debtors have filed a motion (the "Compromise Motion") in the Bankruptcy Cases pursuant to Bankruptcy Code § 105 and Rule 9019 of the Federal Rules of Bankruptcy Procedure seeking approval of this Agreement.

   b. The Bankruptcy Court has granted the Compromise Motion and entered an order (the "Compromise Order") thereon.

   c. The time to commence an appeal of the Compromise Order pursuant to Rule 8002(a) of the Federal Rules of Bankruptcy Procedure has run and no appeal has been filed, or any such appeal has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

   d. The Compromise Order has not been stayed pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure or otherwise.

The first date on which all the preceding (paragraphs 4.a through 4.d, inclusive) have occurred is the "Effective Date." Upon the Effective Date, this Agreement shall become effective and shall be binding upon the Parties.

5. The representations, disclosures, and agreements set forth in the Declaration, including, without limitation, agreements concerning the consequences of failure to disclose certain assets or transactions, are hereby incorporated by reference and made a part of this Agreement.

6.   In furtherance of paragraph 5, Correll agrees as follows:

    a.   In the event that he has failed in the Declaration to disclose either (i) any asset of his that has a value (as of the date the Declaration is signed) in excess of $10,000, or (ii) multiple assets of his having an aggregate value (as of the date the Declaration is signed) in excess of $25,000, or if the value he ascribes to an asset is understated by more than 25% (provided, however, that the difference between the declared and actual value must be at least $5,000), then the Debtors shall have the right to compel Correll to surrender to the Debtors any omitted asset or assets or, at the Debtors' option, to obtain a judgment against Correll personally for the value (as of the date the Declaration is signed) of that asset or those assets and, in the case of an asset whose value has been understated by more than 25% (provided, however, that the difference between the declared and actual value must be at least $5,000), to obtain a judgment against Correll personally for the difference between the stated and actual value.

    b.   In the event that any of the statements made in paragraph 8 of the Declaration is untrue and Correll has made either any gifts of his assets or transfers of his assets for less than reasonably equivalent value (collectively "voidable transactions") to any person (as that term is defined in 11 U.S.C. § 101(41)), trust or any entity of any kind within the two years preceding the date of the Declaration, which voidable transactions involve assets to a single donee or transferee in excess of $10,000 or in the aggregate (to all donees and transferees) of a value in excess of $25,000, then the Debtors shall have the right to obtain a judgment against Correll personally for the value of any and all voidable transactions made within two years preceding the date of the Declaration.

7.   To the maximum extent permitted by law, Correll, on behalf of himself and his successors, assigns, attorneys, and representatives (the "Correll Releasing Parties") hereby release, acquit, and discharge, and covenant and agree that they will refrain and forbear from commencing, instituting, prosecuting, or continuing, any lawsuit, action, claim, right, demand, cause of action, suit or other proceeding (including filing any further claim) against the Debtors, their estates, their affiliates, predecessors, successors, assignors, and assignees, except for any claims to enforce rights, obligations, and duties arising out of this Agreement.

8.   Subject to receipt of the Settlement Payment, to the maximum extent permitted by law, the Debtors and their predecessors, successors, assignors, and assignees (the "Debtor Releasing Parties") hereby release, acquit, and discharge, and covenant and agree that they will refrain and forbear from commencing, instituting, prosecuting, or continuing, any lawsuit, action, claim, right, demand, cause of action, suit or other proceeding against Correll and his successors, assignors, and assignees, except for any claims to enforce rights, obligations, and duties arising out of this Agreement.

9.   The Parties hereby acknowledge that it is their intention that the releases set forth in paragraphs 7 and 8 shall be effective as a full and final release of and as a bar with prejudice to each and every claim as set forth therein that the Correll Releasing Parties and Debtor Releasing Parties have or had against the parties whom they are releasing in paragraphs 7 and 8. In connection with such waiver and relinquishment, the Parties acknowledge that they or their attorneys may hereafter discover facts different from or in addition to the facts that they now

know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to hereby fully, finally, absolutely, and forever release any and all claims released pursuant to paragraphs 7 and 8, which now do exist, may exist or heretofore have existed between them, and that in furtherance of such intentions the release as given herein by the Parties, shall be and remain in effect as a full and complete release of the claims released, notwithstanding the discovery of any such different or additional facts.

Notwithstanding the discovery of any such additional or different facts, the Parties certify that they have read Section 1542 of the California Civil Code set forth below:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Parties waive application of Section 1542 of the California Civil Code, to the extent applicable, and any other statutes, common law rights, rules or the like which may operate to limit the intent of this Agreement with respect to the claims released above. The Parties understand and acknowledge the significance and consequence of this waiver of Section 1542 of the California Civil Code is that even if the Correll Releasing Parties or Debtor Releasing Parties should eventually suffer additional damages on account of the claims released above, they will not be permitted to make any claim for such damages.

It is expressly understood and agreed by the Parties that the facts with respect to this Agreement may turn out to be different from the facts now known or believed by the Parties to be true. Each of the Parties expressly assumes the risk of the facts turning out to be different and agrees that this Agreement will be in all respects effective and not subject to termination or rescission by reason of any such differences.

10.    Each Party shall bear its own attorneys' fees and costs in connection with the Bankruptcy Cases through the Effective Date, including the negotiation, documentation, execution, delivery, and performance of this Agreement. Notwithstanding the preceding sentence, should any action, suit or proceeding be commenced by any Party to this Agreement to enforce any provision hereof, the prevailing Party shall be entitled to recover reasonable attorneys' fees, all costs (whether denominated as such in 28 U.S.C. § 1920), and expert expenses incurred in said action, suit or proceeding, including any appeal.

11.    The Parties acknowledge that this Agreement represents a compromise of disputed claims and that, by entering into this Agreement, none of the Parties admits or acknowledges the existence of any liability or wrongdoing.

12.    Each Party represents and warrants to all of the other Parties and each of them, that it has not assigned or transferred any of the claims or interests addressed in this Agreement. Each Party agrees to defend and indemnify all of the other Parties and each of them against any claim based upon, arising out of, or arising in connection with any such alleged or actual assignment or transfer.

13. The Parties hereby provide assurances of cooperation to each other and agree to take any and all necessary and reasonable steps, including executing any other and further documents or instructions and performing any other and further acts, appropriate to effect the intent of this Agreement. To the best of Correll's knowledge, following reasonable inquiry, as of the date of this Agreement set forth above, Correll represents and warrants that the only claim or right to payment of which he is aware that he has against the Debtor Releasing Parties or their bankruptcy estates is represented by the Claim listed above. In the event the Parties discover subsequently that there exists any other claim or action, Correll will take all necessary action to withdraw or dismiss it forthwith upon request by the Debtors.

14. The Parties specifically consent to the jurisdiction and power of the Bankruptcy Court to determine any dispute relating to this Agreement, including any claim for breach, and to the power and authority of the Bankruptcy Court to enter a final judgment in connection therewith.

15. The Parties may give notice to each other by sending a written communication by overnight mail or e-mail to the Parties at the addresses set forth below, which notice shall be effective on the first business day after notice is sent.

    a.    To Correll:

        Lonnie H. Correll
        623 Farrah Circle
        Dothan, Alabama 36301

        with a copy (which shall not constitute notice) to:

        Regan Loper
        Burr & Forman LLP
        420 North 20th Street, Suite 3400
        Birmingham, Alabama 35203
        Email: rloper@burr.com
        Attention: Regan Loper, Esq.

    b.    To the Debtors:

        Woodbridge Group of Companies, LLC
        14140 Ventura Boulevard, #302
        Sherman Oaks, California 91423
        Email: bsharp@dsi.biz
        Attention: Bradley D. Sharp, Chief Restructuring Officer

with a copy (which shall not constitute notice) to:

Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067
Email: mtuchin@ktbslaw.com and jweiss@ktbslaw.com
Attention: Michael L. Tuchin, Esq. and Jonathan M. Weiss, Esq.

Any Party wishing to change the address or email address at which he, she or it receives notices or payments may do so by giving notice as provided in this paragraph 15.

16. This Agreement is to be construed under and governed by the internal laws of the State of California (without regard to conflict of laws principles) and, as applicable, the Bankruptcy Code.

17. This Agreement contains the entire agreement and understanding among the Parties concerning the matters set forth herein and supersedes all prior or contemporaneous stipulations, negotiations, representations, understandings, and discussions among the Parties or their respective counsel with respect to the subject matter of this Agreement. No other representations, covenants, undertakings, or other earlier or contemporaneous agreements respecting these matters may be deemed in any way to exist or bind any of the Parties. The Parties acknowledge that they have not executed this Agreement in reliance on any promise, representation, or warranty other than those contained in this Agreement.

18. This Agreement is the product of negotiation among the Parties and represents the jointly conceived and bargained-for language mutually determined by the Parties to express their intentions in entering into this Agreement. Any ambiguity or uncertainty in this Agreement is therefore to be deemed to be caused by or attributable to the Parties collectively and is not to be construed against any particular Party. Instead, this Agreement is to be construed in a neutral manner, and no term or provision of this Agreement as a whole is to be construed more or less favorably to any one Party. Furthermore, the Parties hereby waive California Civil Code § 1654.

19. If the Bankruptcy Court declines to approve this Agreement despite the Parties' efforts to obtain such approval or if its approval is reversed on appeal, then (i) this Agreement will be null and void and of no force or effect; (ii) no Party shall have any obligations to any other Party arising out of this Agreement; and (iii) the Parties' respective rights and remedies with respect to all matters addressed by this Agreement will be fully reserved and the Parties will be restored to their respective positions, *status quo ante*, as of the date on which this Agreement was executed.

20. This Agreement may not be modified except as mutually agreed to in a writing signed by all the Parties.

21. No waiver, forfeiture or forbearance of or concerning any provision of this Agreement shall be deemed or shall constitute a waiver, forfeiture or forbearance of or concerning any of the other provisions hereof, or a continuing waiver, forfeiture or forbearance.

22. If, for any reason, any provision of this Agreement is determined to be invalid or unenforceable, such provision shall be automatically reformed to embody the essence of that provision to the maximum extent permitted by law, and the remaining provisions of this Agreement shall be construed, performed and enforced as if the reformed provision had been included in this Agreement at inception.

23. This Agreement may be executed in several counterparts, and any and all such executed counterparts, taken together, will constitute a single agreement binding on all Parties to this Agreement. Facsimiles of signatures may be taken as the actual signatures.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth above (but subject to the provisions regarding effectiveness set forth herein).

WOODBRIDGE GROUP OF COMPANIES, LLC, ET AL.

By: _____
    Name: Bradley D. Sharp
    Title:   Chief Restructuring Officer

LONNIE H. CORRELL

_____

22. If, for any reason, any provision of this Agreement is determined to be invalid or unenforceable, such provision shall be automatically reformed to embody the essence of that provision to the maximum extent permitted by law, and the remaining provisions of this Agreement shall be construed, performed and enforced as if the reformed provision had been included in this Agreement at inception.

23. This Agreement may be executed in several counterparts, and any and all such executed counterparts, taken together, will constitute a single agreement binding on all Parties to this Agreement. Facsimiles of signatures may be taken as the actual signatures.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth above (but subject to the provisions regarding effectiveness set forth herein).

WOODBRIDGE GROUP OF COMPANIES, LLC, ET AL.

By:_____
    Name: Bradley D. Sharp
    Title:   Chief Restructuring Officer

LONNIE H. CORRELL

*[signature]*

_____

# EXHIBIT 1

# DECLARATION OF LONNIE H. CORRELL

173276.1

## DECLARATION OF LONNIE H. CORRELL

I, Lonnie H. Correll, declare as follows:

1. I am over twenty-one years of age and have personal knowledge of the matters set forth herein.

2. I am aware that Woodbridge Group of Companies, LLC, and in excess of 300 of its affiliates (collectively, the "Debtors") are presently debtors and debtors in possession in bankruptcy cases pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), bearing lead case No. 17-12560 (KJC).

3. I am aware that the Debtors are relying on the truth of the statements made in this declaration in entering into a settlement (the "Settlement") with me.

4. I am aware and agree that if I have failed in this declaration to disclose either (a) any asset of mine that has a value (as of the date this declaration is signed) in excess of $10,000 or (b) multiple assets of mine having an aggregate value (as of the date this declaration is signed) of $25,000, or if the value I ascribe to an asset is understated by more than 25% (provided, however, that the difference between the declared and actual value must be at least $5,000), then the Debtors shall have the right to compel me to surrender to them any omitted asset or assets or, at the Debtors' option, to obtain a judgment against me personally for the value (as of the date this declaration is signed) of that asset or those assets, and in the case of an asset whose value has been understated by more than 25% (provided, however, that the difference between the declared and actual value must be at least $5,000), to obtain a judgment against me personally for the difference between the stated and actual value.

5. I am also aware and agree that the Debtors may bring an action in the Bankruptcy Court for the purpose of obtaining the turnover of the omitted asset or assets referenced above in paragraph 4, or, at the option of the Debtors, to obtain a judgment against me personally for the value (as of the date this declaration is signed) of the omitted asset or assets.

6. I further am aware and agree that the Bankruptcy Court shall have the jurisdiction and power to enter a final judgment in favor of the Debtors and against me personally, commanding the turnover of the omitted asset or assets or, at the Debtors' option, for the value (as of the date this declaration is signed) of the omitted asset or assets.

7. I own certain assets in whole or in part. With the exception of the assets listed herein, I do not own or have a beneficial interest, directly or indirectly, in any other assets whether individually or through a corporation (as that term is defined in 11 U.S.C. § 102(9)), trust, partnership or any other entity. A complete listing of all my assets is as follows:

   a. As of the date this declaration is signed, I have a checking account at Regions Bank (last four digits #1444), which holds approximately $3,600.

   b. As of the date this declaration is signed, I own real property located at 623

Farrah Circle, Dothan, Alabama, with an approximate value of $110,000. The mortgage balance on such property is approximately $64,505.

c. As of the date this declaration is signed, I own home furnishings and other household goods, including art, china, crystal, and electronics, with an approximate value of $62,500.

8. I have not made either any gifts of my assets or transfers of my assets for less than reasonably equivalent value (collectively "voidable transactions") to any person (as that term is defined in 11 U.S.C. § 101(41)), trust or any entity of any kind within the two years preceding the date of this declaration which voidable transactions involve assets to a single donee or transferee in excess of $10,000 or in the aggregate (to all donees and transferees) have a value in excess of $25,000.

9. In the event that the statement in paragraph 8 is untrue, I understand and agree that I must pay to the Debtors the value of all voidable transactions to the Debtors, with the values determined as of the date of the voidable transactions.

10. I am aware and agree that the Debtors may bring an action in the Bankruptcy Court for the purpose of obtaining a judgment for the value of any voidable transactions referenced above in paragraphs 8 and 9, and agree that the Bankruptcy Court shall have the jurisdiction and power to enter a final judgment in favor of the Debtors and against me personally, commanding the payments provided in those paragraphs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and is executed this 19th day of December, 2018.

_____
Lonnie H. Correll